# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED TRANSPORTATION UNION,
LOCAL 1745, and SILAS GARCIA,

      Petitioners and Plaintiffs,

vs.                                                                           CIV. No. 98-577 BB/RLP

CITY OF ALBUQUERQUE, et al.,

      Respondents and Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of a motion to dismiss filed by the remaining Defendants (Doc. 45). The Court has reviewed Defendants' ("the City's") submissions[1], held a hearing, and examined the applicable law. For the reasons set forth below, the Court determines that the City's motion should be granted and this case dismissed.[2]

The City filed this motion as a motion to dismiss rather than a motion for summary judgment. In considering a motion to dismiss for failure to state a claim, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir.2001). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set

---

[1] Plaintiffs declined to file a response to the motion, contending they have made their positions clear in prior pleadings. Therefore, the Court must proceed in the absence of any submission by Plaintiffs.

[2] Plaintiff Garcia's claims have all been disposed of in two prior opinions by this Court, leaving only the Union as a Plaintiff. This opinion, by addressing the Union's claims, thereby disposes of all remaining claims and ends the litigation.

of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).[3]

The two claims remaining in this case are the Union's claims under Counts 2 and 3 of the complaint. Both of these Counts concern the Union's displeasure with the City's refusal to bargain over the terms of the City's zero-tolerance policy for drug use by City employees. Plaintiffs contend that this refusal violated the collective bargaining agreement between the City and the Union, as well as an agreement between the parties called the "13(c) Agreement." The City's motion to dismiss is based on several arguments, which the Court will address in order.

First, the City points out that the complaint is, at least in part, a petition for judicial review of an order by an administrative agency, the City's Labor Board. To the extent this is true, the City argues, there is no final determination by the Labor Board as to the Union, and without such a final determination, there is nothing for this Court to review. The Court agrees with this argument. The Labor Board decision attached to the complaint contains paragraphs addressing the issues raised by the Union at the administrative level. In one paragraph, the Labor Board points out that the Union has filed a separate complaint of prohibited practices concerning the same issues, that this separate complaint is still pending, and that the allegations will be

---

[3]In addressing the motion to dismiss, the Court has considered the local Labor-Management Relations ordinance, as well as an agreement between the City and the Union relied upon by the Union as the basis for Count 3 of the complaint. Such consideration does not convert the motion to dismiss into a summary-judgment motion, as the ordinance is a matter of public record and the agreement is referred to in the complaint and is central to the Union's claim. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (where document is referred to in complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss); *Demick v. City of Joliet*, 108 F.Supp.2d 1022, 1025 (N.D. Ill. 2000) (court may take judicial notice of local ordinance, and consideration of same does not convert motion to dismiss into motion for summary judgment).

considered at a future hearing of the Labor Board. It is clear, therefore, that the decision attached to the complaint was not a final decision addressing the merits of the Union's claims at the administrative level. Absent such a final decision, the petition for judicial review is premature with respect to the Union's issues.

In the alternative, the City argues that to the extent the complaint may be construed as a direct action attempting to raise claims that the City has engaged in prohibited labor practices in breach of the collective bargaining agreement, it must be dismissed because the Union has not exhausted its administrative remedies. The City points out that according to the labor relations ordinance, one of the Labor Board's duties is to adjudicate controversies over prohibited labor practices. In addition, the City's refusal to negotiate in good faith with the Union is a prohibited practice under the ordinance, meaning the Labor Board has authority to consider claims such as the one raised in this case. This is consistent with the Labor Board's pronouncement, noted above, that it would consider the Union's separate prohibited-practice claim at a later proceeding. The only means of obtaining court review of such a prohibited practice is to pursue the available administrative remedy, and then obtain a writ of certiorari addressed to the Labor Board, after the Board has reached a decision. *See Conwell v. City of Albuquerque*, 637 P.2d 567, 568 (N.M. 1981) (district court reviewed decision of City's Labor-Management Relations Board, addressing claimed breach of collective bargaining agreement, by writ of certiorari); *see also* NMRA 1-075 (setting out procedure for obtaining writ of certiorari to review administrative decisions where no statutory right of appeal or review exists). Plaintiffs have not deigned to explain to the Court why the *Conwell* case, or Rule 1-075, might not be applicable in this case. Therefore, the Court accepts the City's assertions that the only means of obtaining judicial scrutiny of a prohibited

3

practice is to proceed before the Labor Board, obtain a decision from that body, and then file a petition for writ of certiorari. A direct action for redress based on a prohibited practice may not be maintained in this or any other court, at least according to the materials submitted to the Court in this case. Since, as discussed above, no final decision was obtained from the Labor Board concerning the matter, the available administrative remedies have not been exhausted.

The above discussion concerns Plaintiffs' claims that the City breached the collective bargaining agreement, and committed prohibited practices, by failing or refusing to negotiate the issue of the City's zero-tolerance policy toward drug use. Plaintiffs also maintain, in Count 3 of the complaint, that this same failure or refusal violates the so-called 13(c) Agreement between the Union and the City. Plaintiffs' assertions are vague; the complaint states only that the Agreement must provide generally for "the continuation of collective bargaining rights." Plaintiffs do not explain which specific provision of the 13(c) Agreement was violated by the City's actions, or how the phrase "continuation of collective bargaining rights" could be construed to require the City to bargain the issue of the zero-tolerance policy. Furthermore, as the City points out, under Section 15 of the 13(c) Agreement any claimed breaches of that agreement are to be submitted to arbitration, rather than becoming the subject of a direct action in court. Plaintiffs' breach-of-contract claim, therefore, cannot be maintained as presented in the complaint.

The Court notes that the City, in its brief, construes Count 3 as a request that this Court order the City to engage in "interest arbitration"[4], despite the lack of any mention of such relief in

---

[4]Interest arbitration is arbitration aimed at forcing an employer or union to bargain concerning issues that are not yet part of an existing collective bargaining agreement. "Rights arbitration," on the other hand, is arbitration aimed at determining whether the currently extant provisions of the agreement have been violated. *See Lodge 802, Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Pennsylvania*

4

the complaint. To the extent this might be the goal of Count 3, the Court agrees with the City that the claim must be dismissed, for several reasons.

Initially, there is no indication in the complaint that the Union ever submitted a written request for arbitration of the issue. Such a request is a precondition to arbitration, according to Section 15 of the 13(c) Agreement. The agreement provides that disputes or controversies concerning the protection provided by the agreement, or with respect to the interpretation, application, or enforcement of the agreement, may be submitted to arbitration "at the written request of the Recipient or the union." Without such a request, and a denial of same, there is no basis for this Court to order the City to engage in arbitration.

It is also noteworthy that Section 4 of the 13(c) Agreement specifically incorporates existing "arbitration or other dispute settlement procedures" concerning employees' collective bargaining rights. As discussed above, the Labor-Management Relations ordinance enacted by the City specifically applies to instances, such as this one, in which the City is accused of refusing to negotiate in good faith concerning a labor issue. Under the 13(c) Agreement, therefore, as supplemented by the ordinance, Plaintiffs were required to exhaust their administrative remedies prior to litigating a claim of breach. The Court has already determined above that Plaintiffs failed to do so in this case, since no final decision of the Labor-Management Relations Board was obtained prior to the filing of this case.

---

*Shipbuilding Co.*, 835 F.2d 1045, 1046-47 (3d Cir. 1987). Plaintiffs' claim in this case, that the City should be forced to bargain and establish rules concerning the zero-tolerance rule, appears to be an attempt to add new terms of employment, and therefore to be a subject for interest arbitration rather than rights arbitration. *Id.* However, as noted in the text, Plaintiffs have not requested any order concerning interest arbitration in their complaint. Furthermore, as discussed *infra*, such a request would be in vain.

Finally, it appears that an attempt to force interest arbitration of the issue would fail on its merits. Arbitration, including interest arbitration, is a matter of contract, and a party cannot be required to submit to arbitration any dispute the party has not agreed to arbitrate. *Lodge 802*. As noted above, the arbitration provision of the 13(c) Agreement in this case applies to disputes or controversies "with respect to the protection afforded by this Agreement, or with respect to the interpretation, application or enforcement of the provisions of this Agreement..." As the City points out, this is a rights-arbitration provision; it does not require that the parties arbitrate new issues, such as the zero-tolerance policy, that are not already part of the Agreement. *See id.* (construing similarly-phrased arbitration provision as providing for rights arbitration, rather than interest arbitration); *compare Amalgamated Transit Union, AFL-CIO v. Brock*, 809 F.2d 909, 913, fn. 4 (D.C. Cir. 1987) (example of an interest arbitration provision includes language allowing submission of a labor dispute to arbitration, and defining "labor dispute" broadly to include any controversy concerning the making or maintaining of collective bargaining agreements, and the terms to be included in such agreements). There appears to be no basis, therefore, for this Court or any court to order the City to arbitrate the zero-tolerance policy.[5]

The Court recognizes Plaintiffs' main contention, which is that this Court does not have jurisdiction over the state-law claims asserted in Counts 2 and 3, and should remand the claims to state court for resolution. It is clear, however, that even after the dismissal of the federal due-process claim, this Court retains pendent jurisdiction to address any remaining state-law claims.

---

[5]Given the Union's lack of participation with respect to this motion to dismiss, the Court's ruling concerning the interest-arbitration issue should be considered law of the case only, and should not be given preclusive effect in any case in which the 13(c) Agreement and its effect on interest arbitration are genuinely litigated.

*See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995); 28 U.S.C. § 1367(c) (district court has discretion to exercise supplemental jurisdiction over state law claims once federal claim has been dismissed). The key considerations in deciding whether to address the state-law claims are generally accepted principles of judicial economy, convenience, and fairness to the litigants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In this case, principles of judicial economy strongly counsel in favor of addressing, and disposing of, all claims in the case. The history of this case is extensive. Plaintiff Garcia initially litigated the matter of his termination alone, in the administrative process and in federal court. *See Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000) (detailing history of Garcia's litigation efforts). He was initially successful during the administrative process, when the Personnel Board imposed a suspension rather than termination; however, during the City's appeal of that decision to state court, Garcia refused to accept a different position with the City pending resolution of the appeal, and then for some reason allowed a default judgment to be entered in the state-court proceedings, which led the Personnel Board to reverse its prior decision and uphold the termination. *See id.* While this was going on, Garcia pursued his federal-court case, which he lost. Before the appeal of that case could be decided, Garcia filed the current lawsuit in state court, adding the Union as a party in an apparent attempt to avoid the restrictions of the claim-preclusion doctrine. This attempt did not work; as discussed in the preceding opinions filed in this case, Garcia is barred from re-litigating any issues arising out of his termination, because the claim-preclusion doctrine bars not only those claims that were actually litigated in the prior proceedings, but all claims arising out of the same transaction or set of facts as those involved in the prior proceedings. If the Court were to remand Counts 2 and 3, it is apparent that Plaintiff Garcia would attempt to re-

7

join the case at the state-court level.[6]  Furthermore, the Union is not left without a remedy for attempting to obtain satisfaction of its claim that the City wrongly refused to bargain the zero-tolerance policy and its consequences.  As noted above, the Labor Board has stated that the Union filed its own, separate complaint concerning that refusal, that the issue was within the Labor Board's jurisdiction, and that it would be considered at a later date.  The Union therefore may present, and in fact may have already presented, its facts and arguments in the proper administrative forum.  Considering the factors of fairness to the parties and judicial economy, the Court finds it is preferable to put this litigation to an end and dismiss the Union's state-law claims with prejudice, for the reasons discussed above.

**Conclusion**

Based on the foregoing, Counts 2 and 3 will be dismissed.  All other counts having already been dismissed in prior opinions, the case will also be dismissed in its entirety.

Dated this 4th day of December, 2001.

---

                                        BRUCE D. BLACK
                                        UNITED STATES DISTRICT JUDGE

---

[6]In fact, at the hearing on the order to show cause, the only Plaintiff appearing with counsel was Plaintiff Garcia, and counsel contended that Garcia still had claims alive in this lawsuit, despite the Court's earlier opinions dismissing any claim Garcia may have attempted to bring in this case.

**Attorneys:**

**For Plaintiffs**

Paul Livingston
P.O. Box 90908
Albuquerque, New Mexico 87199


**For Defendant City of Albuquerque
and other City Defendants**

Charles W. Kolberg
Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103